NOT DESIGNATED FOR PUBLICATION

No. 129,656

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

CHRISTOPHER M. MCAHREN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Harvey District Court; MICHAEL LLAMAS, judge. Submitted without oral argument. Opinion filed August 7, 2026. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Miranda R. Neal*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., GARDNER and CLINE, JJ.

PER CURIAM:  Christopher M. McAhren appeals his sentence for his convictions of aggravated criminal sodomy, aggravated indecent liberties with a child, rape, and aggravated internet trading in child pornography. The Harvey County District Court sentenced him to four consecutive life sentences, each of which carries a mandatory 25-year term of imprisonment. McAhren argues that by ordering his four life sentences to run consecutive to each other, the district court abused its discretion. After careful review, we affirm McAhren's sentence.

1

FACTUAL AND PROCEDURAL BACKGROUND

In January 2025, the State charged McAhren with one count each of rape, aggravated internet trading in child pornography, and sexual exploitation of a child and three counts of aggravated criminal sodomy, all of which were Jessica's Law off-grid crimes, for conduct related to his daughter, E.M., who was six years old.

In April 2025, McAhren pleaded guilty to four offenses: aggravated criminal sodomy, an off-grid person felony, in violation of K.S.A. 21-5504(b)(1); an amended charge of aggravated indecent liberties with a child, an off-grid person felony, in violation of K.S.A. 21-5506(b)(3)(A); rape, an off-grid person felony, in violation of K.S.A. 21-5503(a)(3); and aggravated internet trading in child pornography, an off-grid person felony, in violation of K.S.A. 21-5514(b). In accordance with the plea agreement, the State dismissed McAhren's other charges. Under the plea agreement, McAhren was "free to argue for any lawful sentence." Yet the agreement added that he "is again specifically notified that the Sentencing Judge does not have to grant any departure of any kind and may sentence the Defendant to life in prison."

At his plea hearing, McAhren stipulated to the factual basis in the probable cause affidavit. That affidavit detailed law enforcement's investigation into a report of child pornography that was discovered on another person's phone, which led to McAhren's arrest and E.M.'s disclosure of how he sexually abused her. We spare some of the details of these allegations, but we include some details of E.M.'s abuse as necessary to understand the district court's sentencing rationale.

During E.M.'s forensic interview, she disclosed a series of sexual assaults. She told the interviewer that on one occasion, McAhren licked her butt and vagina when she was six years old. She also disclosed that he "put his 'wiener' in [E.M.'s] mouth" and "'something shot in my mouth,'" that was "white" and "disgusting." E.M. disclosed that

2

McAhren's girlfriend (who was a codefendant) told him to put his penis in E.M.'s vagina, which he did while the girlfriend watched, and he was "moving around when he did it." E.M. also said McAhren "put his 'wiener' in her butt and wiggled it around to wake her up." She disclosed that McAhren took pictures of her on multiple occasions, which included posed pictures and photographs of her "butt and vagina." During her interview, E.M. was shown a series of photographs. One of these showed "a juvenile blonde girl bent over, wearing 'thong' style underwear. The butt and underwear were covered up, so E.M. could not see that part of the picture. E.M. identified that juvenile female as herself and said [McAhren] took that picture of her." That photograph was exchanged online.

McAhren was sentenced on July 25, 2025. At sentencing, the State argued that the heinous nature of his crimes against E.M. and his fleeing after the child pornography was discovered warranted the imposition of consecutive sentences. The State argued:

"[Pursuant] to the plea agreement, the State today is asking that you impose four consecutive life sentences for Christopher McAhren. Christopher McAhren committed heinous crimes to his own daughter. He stole her innocence. When she's supposed to be in Kindergarten and First Grade, learning how to read, going to the zoo, having fun with dad on visits. He instead was sexually abusing her every chance he got and taking images of her, and sharing those images and including other people [in the abuse].

"Ultimately, when this comes to light, the situation gets worse because he flees to Nebraska. He's only arrested and extradited because he gets stopped in a traffic stop with the Nebraska State Patrol.

"Christopher McAhren is a absolute public safety risk. He impacted his daughter's life forever with these crimes. He stole her innocence. She will forever have to deal with this and he should forever have to deal with this. The State of Kansas is asking that you serve con—that you order consecutive sentences. He's 31 years old, if he gets out, he will have access to children. The only way the Court can ensure that he doesn't have access to children, practically speaking, is to order consecutive life sentences. And that is what the State is asking.

3

"He didn't take any of these things into consideration as he routinely sexually abused his daughter. He didn't—he didn't fulfill his role as dad. He didn't protect his kid. Instead he abused his kid. She has to live with this forever, so he should live in prison forever.

"The State is asking for four consecutive life sentences pursuant to the plea agreement for those reasons."

In response, counsel stated that McAhren recognized "that he failed in his role as a father" and "because he wants the Court to understand the depth of his acceptance of responsibility," he was not seeking a departure sentence. Instead, McAhren's counsel argued that the district court should impose concurrent sentences. In support of that request, his counsel argued several factors that the court may consider when ordering a departure:

1. McAhren had limited criminal history. He had no prior person felonies, and his most recent conviction was 12 years before.

2. McAhren's offenses were nonviolent in nature because the Legislature classified sex crimes separately from violent crimes and there was no evidence that he had threatened or committed violence to the victim.

3. McAhren did not financially profit from the exchanged child pornography.

4. The convictions were interconnected sex offenses involving the same victim as opposed to charges with different elements.

5. McAhren had accepted responsibility. Three people were charged in connection with the case and McAhren was the first to come forward and accept responsibility within a few months after charges were filed. The case's quick movement on the court's docket showed "the depth and breadth of his remorse and acceptance in this case." And McAhren's acceptance of responsibility, quick action in the case, and stipulation to the facts (which prevented the admission of detailed evidence and photographs) limited the stress and trauma to E.M.

4

6. McAhren was addicted to alcohol at the time of offenses and in a "dark place."

7. Concurrent sentences served the goal of rehabilitation better than consecutive sentences did.

McAhren personally addressed the district court and admitted he "made a terrible mistake" and stated he "failed [E.M.] as a daddy."

After hearing these arguments, the district court denied McAhren's request for concurrent sentences and sentenced McAhren to four consecutive life sentences, each with a minimum 25-year term of imprisonment.

In imposing this sentence, the district court judge acknowledged that McAhren did not delay the proceedings but accepted a plea. Still, the court emphasized the severity of McAhren's crimes and the degree of abuse he inflicted on his daughter, concluding that the judge could not in "good conscience" order the sentences be served concurrently.

"I heard your statement and I would agree that you did come in and you waived your preliminary hearing. You came in and you plead guilty. You didn't drag this case out. I—I agree those are all facts and they are true facts. But there are other facts too. There are facts that you abused your daughter. That you abused her, you sodomized her, you raped her. That you put images of her on the internet and traded those with individuals. That's unconscionable in my eyes. I know that you are telling the Court that you're sorry. I don't know if I can really accept that, other than it's what you've said. But I feel that you are a danger to this community and you are a danger to your daughter. And I, I wonder how she is going to move on from this. I hope that she can, but the bottom line is what's done is done. And now it's my job to consider what is the appropriate punishment for what's occurred today."

McAhren timely appeals his sentence.

5

DID THE DISTRICT COURT ABUSE ITS DISCRETION BY SENTENCING MCAHREN TO FOUR CONSECUTIVE LIFE SENTENCES?

McAhren argues that the district court abused its discretion in ordering his four hard 25 sentences to run consecutively to each other. He argues that requiring him to serve a 100-year sentence guarantees that he will never be released from prison and that no reasonable person would think this is an appropriate sentence that achieves the goals of punishment for his crimes of conviction.

The State responds that the district court properly exercised its discretion by ordering McAhren's sentences to run consecutively because ample evidence showed that reasonable minds could conclude that consecutive terms were appropriate and that McAhren failed to show that the district court's imposition of the consecutive sentences was unreasonable.

McAhren properly raises this issue in this direct appeal. See *State v. Goens*, 317 Kan. 616, 619-20, 535 P.3d 1116 (2023) (holding appellate courts can review sentences for off-grid crimes, which are not presumptive under the Kansas Sentencing Guidelines); *State v. Ross*, 295 Kan. 1126, Syl. ¶ 12, 289 P.3d 76 (2012) (holding an off-grid crime is not a "'presumptive sentence' as contemplated in K.S.A. 21-4703[q]," which is now codified as K.S.A. 21-6803[q], "because imposition of the life sentence was not arrived at by applying the applicable grid block of the sentencing guidelines"); *State v. Nixon*, No. 127,661, 2025 WL 1783573, at *1-2 (Kan. App. 2025) (unpublished opinion) (applying *Ross* to a Jessica's Law case and reaching appellant's substantive arguments).

Generally, "'it is within the trial court's sound discretion to determine whether a sentence should run concurrent with or consecutive to another sentence.'" *Goens*, 317 Kan. at 619 (quoting *State v. Baker*, 297 Kan. 482, 484, 301 P.3d 706 [2013]). Because McAhren's convictions were off-grid crimes, we review his challenge to the imposition of

6

consecutive sentences for an abuse of discretion. See 317 Kan. at 619. A district court abuses its discretion when its action is arbitrary, fanciful, or unreasonable (meaning no reasonable person would have taken the view adopted by district court); is based on an error of law; or is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025); *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

> "It is the sentencing judge alone who determines the appropriate sentence to be imposed or other disposition of the case by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, and the public safety. A sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive." *State v. Vanderveen*, 259 Kan. 836, 842-43, 915 P.2d 57 (1996).

See *State v. Frecks*, 294 Kan. 738, 742, 280 P.3d 217 (2012) (quoting *Vanderveen* with approval); *State v. Noches-Padilla*, No. 121,712, 2021 WL 3438505, at *11-12 (Kan. App. 2021) (unpublished opinion) (same).

McAhren has the burden to show the district court abused its discretion by imposing consecutive sentences. See *Goens*, 317 Kan. at 620. To that end, he stresses that his sentence is functionally a life sentence without the possibility of parole and it is unreasonable because he had little criminal history, the degree of harm in this case was less than typical, he accepted responsibility (which included not asking for a departure to a grid-based sentence), and concurrent sentencing would provide incentive for him to participate in rehabilitation efforts.

Yet when sentencing McAhren, the sentencing court judge explained why he ordered consecutive sentences instead of concurrent sentences—"you abused her, you sodomized her, you raped her[, and] you put images of her on the internet and traded those with individuals. That's unconscionable in my eyes." The district court judge

continued, "I feel that you are a danger to this community and you are a danger to your daughter." Our review of the record shows that the district court evaluated the facts of the case when deciding the sequencing of McAhren's sentences. The court acknowledged McAhren's acceptance of responsibility, but the court also considered McAhren's abuse of the parental relationship, the heinousness of the crimes McAhren repeatedly committed against his young daughter, and the profound impact his crime would have on E.M. for the rest of her life.

Ordering these four hard 25 sentences to run consecutive is similar to the sentence the Kansas Supreme Court affirmed in *Frecks*, 294 Kan. at 742. In that case, Frecks was convicted of two counts of off-grid aggravated indecent liberties with a child after pleading guilty, and the district court sentenced him to two consecutive life sentences, with no possibility of parole for 50 years (as each sentence was a hard 25 sentence under Jessica's Law). 294 Kan. at 738-39. When sentencing Frecks, the district court judge did not explain the specific reasons for imposing consecutive life sentences, saying only: "'Based upon the plea negotiations and the allegations involving and surrounding the plea and the filing documents, these will run consecutive to one another.'" 294 Kan. at 741-42. Yet the plea agreement "provided that the State would stand silent at sentencing, while Frecks reserved his right to request concurrent sentences." 294 Kan. at 742.

On appeal, Frecks argued that the district court had abused its discretion by ordering consecutive sentences because these factors supported concurrent sentencing: "(1) He took responsibility for his actions and entered guilty pleas; (2) he prevented the victims from being traumatized by a trial; (3) he saved the State the expense of a trial; and (4) he had no criminal history." 294 Kan. at 742. The Kansas Supreme Court stated that while it would be better practice for the sentencing court to have explained its reasons for imposing consecutive life sentences, "a sentencing judge's failure to engage in a lengthy colloquy does not amount to an abuse of discretion." 294 Kan. at 742. And while reasonable people may disagree as to whether the sentences should have been

8

sequenced concurrently or consecutively, "under the facts of this case, it was not an abuse of discretion to impose the life sentences consecutively;" the court thus affirmed the sentence. 294 Kan. at 742. See also *State v. McMullen*, 290 Kan. 1, 10, 221 P.3d 92 (2009) (finding no abuse of discretion by imposing consecutive sentences for two counts of off-grid sexual offenses).

Here, the sentencing court judge provided a reasoned explanation for why he sentenced McAhren to consecutive sentences. The judge's explanation is rooted in consideration of McAhren's background, the facts of the case, and public safety. See *Vanderveen*, 259 Kan. at 842-43. Given these considerations, and in light of the prolonged sexual abuse that McAhren inflicted on his daughter, we cannot hold that no reasonable person would agree with the decision made by the district court.

Affirmed.